UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DALE SCOTT,                                    Case No. 11-11009

            Plaintiff,                     David M. Lawson
v.                                                 United States District Judge

COMMISSIONER OF SOCIAL SECURITY,        Michael Hluchaniuk
                                                   United States Magistrate Judge

            Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 14)

## I.  PROCEDURAL HISTORY

        A.  Proceedings in this Court

On March 14, 2011, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge David M.

Lawson referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability,

disability insurance, and supplemental security income benefits.  (Dkt. 3).  This

matter is before the Court on cross-motions for summary judgment.  (Dkt. 11, 14).

        B.  Administrative Proceedings

Plaintiff filed the instant claims on December 10, 2007, alleging that he

became unable to work on November 15, 2007. (Dkt. 9-5, Pg ID 166). The claim was initially disapproved by the Commissioner on June 12, 2008. (Dkt. 9-4, Pg ID 115-122). Plaintiff requested a hearing and on February 4, 2010, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Ethel Revels, who considered the case *de novo*. In a decision dated April 27, 2010, the ALJ found that plaintiff was not disabled before June 11, 2009, but was disabled thereafter. (Dkt. 9-2, Pg ID 35). Plaintiff requested a review of this decision on July 1, 2010. (Dkt. 9-2, Pg ID 30). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (Dkt. 9-2, Pg ID 28-29), the Appeals Council, on January 10, 2011, denied plaintiff's request for review. (Dkt. 9-2, Pg ID 25-27); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

   For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 49 years of age at the time of the most recent administrative hearing.  (Dkt. 9-2, Pg ID 41).  Plaintiff's relevant work history included approximately 12 years as a cab driver and an industrial laborer.  (Dkt. 9-6, Pg ID 194).  In denying plaintiff's claims, defendant Commissioner considered COPD, poor eyesight, cardiac impairments, a back problem, and diabetes as possible bases of disability.  (Dkt. 9-6, Pg ID 193).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 15, 2007.  (Dkt. 9-2, Pg ID 41).  At step two, the ALJ found that plaintiff's chronic obstructive pulmonary disease, high blood pressure, diabetes mellitus, a back disorder, vision disorder, depression, and gastroesophageal reflux disease were "severe" within the meaning of the second sequential step.  *Id.*  In addition, as of June 11, 2009, the ALJ found that the plaintiff had the severe impairments of residuals of an abdominal aortic aneurysm, peripheral vascular disease, and coronary artery disease.  (Dkt. 9-2, Pg ID 42).  At step three, the ALJ found no evidence that plaintiff's combination of impairments

met or equaled one of the listings in the regulations. (Dkt. 9-2, Pg ID 43). At step four, the ALJ found that plaintiff could not perform any past relevant work. (Dkt. 9-2, Pg ID 48). At step five, the ALJ granted plaintiff benefits from June 11, 2009 forward, but determined that before that date, plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 9-2, Pg ID 42). The ALJ denied benefits for the period of November 15, 2007 to June 10, 2009 but found him disabled beginning on June 11, 2009.

B.    Plaintiff's Claims of Error

Plaintiff asserts that the ALJ did not follow the requirements of SSR 83-20 and he disputes the finding by the ALJ of a June 11, 2009 onset date. Plaintiff points out that the rule was not cited in the decision and the stated procedure for justifying the onset date was not followed. According to plaintiff, the process by which the appropriate onset date is determined is set forth in SSR 83-20. The process first indicates that the applicants allegations be determined with an emphasis on the allegations made at the time of application. The rules indicate a policy to examine the Disability Appeal Reports and face-to-face contact to determine the nature and scope of the disability. In this case, the face-to-face meeting (Tr. 160) which occurred on December 17, 2007 indicated observed difficulties with sitting, walking and standing. A report of contact dated February 8, 2008 indicated that plaintiff was walking with a walker. (Tr. 175). The

Function Report stated difficulties with COPD, Eyesight, Back Problems and Diabetes.  A prescription was previously given for Nitroglycerin following repeated hospital visits for atypical chest pains.

Plaintiff indicates that the second step of SSR 83-20 indicates a policy of stating the importance of the date that an individual last worked.  In the case at bar, plaintiff last was employed as a cab driver and was forced to stop his employment on November 15, 2007.  (Tr. 165).  Plaintiff asserts that it is significant that within one month, he underwent a surgical procedure that had complications and resulted in the extended need for pain medications extending to the time of the hearing.  At the hearing, the VE identified a limited number of jobs when presented with a residual functional capacity of sedentary employment with a moderate limitation in the ability to understand, remember and carry out detailed instructions and a restriction to simple repetitive employment.  (Tr. 19).

Plaintiff describes the third step of SSR 83-20, which sets forth the SSA policy of addressing "slowly progressing impairments."  This step does not mandate a listing severity but instead allows for vocational factors to contribute to the determination of when a disability begins.  In this case, plaintiff contends that there were profound limitations including sitting, standing, the need for frequent urination, the need to lay down during the day.  Plaintiff argues that the uncontested, objectively supported medical conditions clearly support a vocational

disqualification from any work related activities since the claimed onset date of November 15, 2007.

Next, plaintiff asserts that the ALJ in this case did not credit the treating physician Hassan Dakroub, MD, who indicated a reduction in capacity to less than sedentary following the surgical procedure  (Tr. 411) and April 1, 2008 (Tr. 459). Dr. Dakroub noted severe back pain, lower extremity pain, neuropathy problems, standing and depression.  According to plaintiff, the ALJ did not provide a sufficient explanation why the treating physician opinion was denied in violation of SSRs 96-2p and 96-8p.

C.    The Commissioner's Motion for Summary Judgment

The Commissioner disagrees with plaintiff argues that the ALJ should have found him disabled earlier than June 2009 because of his heart condition and failed to follow SSR 83-20.  According to the Commissioner, plaintiff's analysis conflates the cardiac impairment which the ALJ found disabling and the other impairments which the ALJ found not disabling prior to June 2009.  The Commissioner points out that plaintiff admitted at the hearing that he stopped work because of back problems, not because of cardiac problems.  While SSR 83-20 provides that the "starting point in determining the date of disability is the individual's statement as to when disability began," plaintiff never testified as to when his heart condition became disabling.  SSR 83-20 also notes that "[t]he

day the impairment caused the individual to stop work is frequently of great significance in selecting the proper onset date." However, the Commissioner argues that because plaintiff did not stop work because of his cardiac impairment, the date of work termination is of little import in determining when that impairment became disabling.

The Commissioner acknowledges that the record suggests that plaintiff's cardiac impairment was slowly progressing, but contends that plaintiff does not explain why the ALJ's finding that the impairment became disabling in June 2009 was unreasonable. According to the Commissioner, the evidence clearly supports a finding that plaintiff's cardiac impairment was non-disabling through December 2008 and clearly supports the ALJ's finding that plaintiff had developed a disabling cardiac condition in December 2009. Between these two dates, the Commissioner contends, there is no salient medical evidence that sheds light on the status of plaintiff's cardiac impairment. The Commissioner argues that plaintiff does not explain why the ALJ should be faulted for selecting a date near the midpoint of December 2008 and December 2009 and given that plaintiff's treating doctor rated his cardiovascular system as normal as late as December 2008, it was reasonable for the ALJ to conclude his cardiac impairment was not disabling until June of 2009.

According to the Commissioner, the medical evidence of cardiac impairment

prior to December 2008 was fully consistent with the ALJ's finding that plaintiff

could do a range of sedentary work.  A May 2006 stress test

was normal.  (Tr. 260).  In November 2006, plaintiff had "questionable mild"

congestive heart failure.  (Tr. 276).  His EKG was normal except for the presence

of frequent premature ventricular contractions; this abnormality was likely due to

plaintiff's low potassium levels rather than any structural abnormality.  (Tr. 276).

While he had a murmur, his cardiac enzymes and pulse were normal.  (Tr. 276-77).

Testing showed only mild mitral regurgitation and a normal ejection fraction.  (Tr.

277).  In April 2007, plaintiff went to the emergency room complaining of chest

pain, but that pain was quickly relieved once he went to the emergency room (Tr.

328).  A chest x-ray was negative, and plaintiff denied dizziness or fainting (Tr.

328).  Again, heart rate and cardiac enzymes were normal.  (Tr. 328).  In July

2007, plaintiff's EKG was non-specific but was negative for ischemia.  (Tr. 344).

A stress echocardiogram was normal, including a normal ejection fraction.  (Tr.

350).  Again in January 2008, plaintiff complained of chest pain but had a normal

sinus rhythm with no ecotopy and normal cardiac enzymes.  (Tr. 478).  In August

2008, a nuclear medicine scan showed no significant EKG repolarization, which

would have suggested ischemia.  (Tr. 488).  Plaintiff also had a stress

echocardiogram in August 2008, which found no perfusion defect and normal

ejection fraction.  (Tr. 520).  Although there was a suggestion of possible ischemic

dilation, the evidence suggested only "transient" dilation.  (Tr. 520).

Plaintiff's primary care provider indicated on a December 2008 form that plaintiff was normal from a cardiovascular perspective.  (Tr. 410).  Although plaintiff may have had some cardiac problems, the doctor's opinion certainly supports the ALJ's finding that there was no disabling cardiac impairment.  Indeed, plaintiff told his doctor the next month that he felt fine and had no complaints.  (Tr. 530).  The Commissioner acknowledges that plaintiff was not in good shape in December 2009, when he was examined by Dr. Gupta.  At that point, the doctor diagnosed an abdominal aortic aneurysm and peripheral artery disease (Tr. 540), neither of which had been found on any of Plaintiff's other examinations, according to the Commissioner.  Dr. Gupta also found an S4 heart sound, which was abnormal and had not been found earlier.  (Tr. 540).  His conclusion that plaintiff had ischemic heart disease differed from previous reports that plaintiff did not have ischemia or only had mild ischemia.  Thus, the Commissioner contends that the evidence shows that plaintiff took a turn for the worse sometime in 2009, and the ALJ responded appropriately by finding him disabled in the middle of that year.

The Commissioner also urges the Court to reject plaintiff's argument that the ALJ failed to follow SSR 83-20 as it relates to plaintiff's other impairments. SSR 83-20 addresses a situation in which an ALJ finds that a progressive impairment

Report and Recommendation
Cross-Motions for Summary Judgment
*Scott v. Comm'r*; Case No. 11-11009

disabled the claimant at some point during the time period being adjudicated.  The

Commissioner points out that the ALJ never found that plaintiff's non-cardiac

impairments were disabling, so he logically did not reach the question of when

those impairments became disabling.  Rather, the ALJ found that plaintiff became

disabled only when he became unable to work from a cardiac perspective.  The

question then becomes, according to the Commissioner, whether substantial

evidence support the ALJ's determination that plaintiff's back impairment and

other impairments were not disabling through June 11, 2009. Plaintiff had an MRI

showing disc bulges (not herniations) and accordingly

had back surgery in December 2007.  (Tr. 381).  He went back into the hospital the

next month because his operation site was infected, but there is no indication that

the infection lasted anywhere near 12 months.  And the evidence indicates that

Plaintiff did improve.  He was using a walker after surgery, but quickly was able to

switch over to a cane.  (Tr. 432).  At a consultative examination, he reported using

a cane on occasion but mostly only when outdoors.  (Tr. 460).  At the consultative

examination in May 2008, plaintiff showed good muscle strength

with normal gait and stance.  (Tr. 462).  Although he reported difficulty with

specific gaits (e.g., tandem gait), he was able to get on and off the examination

couch without difficulty.  (Tr. 462).  He reported normal sensation, and although

his deep tendon reflexes were "sluggish," there is no indication they differed from

Report and Recommendation
Cross-Motions for Summary Judgment
*Scott v. Comm'r*; Case No. 11-11009

side to side.  (Tr. 463).  The examiner, Dr. Banjeri, concluded that plaintiff had "no significant functional limitation orthopedically"  (Tr. 463); he also had no limitations due to obesity except for difficulty squatting.  (Tr. 463).  A state agency physician, Dr. Kuiper, reviewed the record as it existed in May 2008 and concluded plaintiff could do light work.  (Tr. 467).  There is no indication in the record that plaintiff's back condition worsened after Dr. Bankeri and Dr. Kuiper wrote their opinions.  Accordingly, their opinions readily provide substantial evidence to support the ALJ's conclusion that Plaintiff could do at least sedentary work through June 2009.

The Commissioner points out that p aintiff's criticism of the ALJ's findings seems to be centered on the check-the-box medical opinions submitted by Dr. Dakroub, an infectious disease specialist.  The form filled out in April 2008 – only a few months after surgery, is, according to the Commissioenr, obviously premature, (Tr. 459), because a finding of disability requires the inability to engage in substantial gainful activity that has lasted or is expected to last a minium of 12 months.  Dr. Dakroub's form filled out in December 2008 (i.e., 12 months after surgery) indicates plaintiff was less impaired than he was in April 2008.  (Compare Tr. 411 with Tr. 459).

The Commissioner acknowledges that the ALJ erred in not discussing Dr. Dakroub's December 2008 form, but argues that under *Wilson*, a de minimis

violation of the treating source rule might be harmless error; for instance, a "treating source's opinion [might be] so patently deficient that the Commissioner could not possibly credit it . . ." *Id.* In this case, the Commissioner asserts that Dr. Dakroub's opinion was patently deficient. Dr. Dakroub did not provide objective support for his limitations, and such support cannot be gleaned from the doctor's sparse clinical notes. Rather, Dr. Dakroub listed diagnoses which appear to have little to do with the limitations (e.g., prostate cancer) and listed plaintiff's subjective pain complaints. Some of the limitations imposed by Dr. Dakroub appear to bear no relation at all to plaintiff's impairments. For instance, the doctor indicated plaintiff could not reach, push, pull, or even engage in fine manipulations, despite failing to list any condition which could reasonably be expected to cause such limitations. (Tr. 441). According to the Commissioner, the inclusion of these wholly unsupported limitations suggests that Dr. Dakroub was "bend[ing] over backwards to assist [his] patient in obtaining benefits." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). When combined with the conclusory nature of the doctor's opinion, the apparent bias of Dr. Dakroub (as demonstrated by his endorsement of implausible limitations such as an inability to engage in fine manipulation) renders his opinion patently deficient; the Commissioner could not possibly credit it. Accordingly, the Commissioner contends that the *Wilson* error is harmless.

The Commissioner next argues that while plaintiff makes some reference to a urological impairment, he does not explain why that impairment was disabling. He does not challenge the ALJ's determination that his prostate surgery was a success and that his prostate cancer had been in remission over the last four years. (Tr. 18-19).  The ALJ also observed that plaintiff had four instances of epididymitis (an inflammation of part of the reproductive tract) which required treatment for four days to two weeks, but recognized that there was no evidence of a long-term limitation of function related to plaintiff's urological system.  (Tr. 19). While plaintiff speaks of urinary incontinence requiring frequent bathroom breaks and diapers, he does not cite any medical evidence reflecting treatment for incontinence.  Moreover, the Commissioner points out that the vocational expert testified without contradiction that an employer would generally allow 5 minutes per hour for bathroom breaks (Tr. 75), so the ALJ's finding would still be supported by substantial evidence even if plaintiff had to urinate with some frequency.  Additionally, as the ALJ observed, plaintiff's chief complaint to the consultative examiner concerned his back, not his bladder.  (Tr.19, 450).  The Commissioner also points out that plaintiff failed to cite notes from his primary care doctors which suggest a disabling urological impairment.  Accordingly,  the Commissioner contends that plaintiff's assertion that the ALJ erred by not finding him disabled due to a urological condition should be rejected.

## III.   DISCUSSION

A.   <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq.*).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    <u>Analysis</u>

Social Security Ruling 83-20 governs the determination of disability onset date. Once a finding of disability is made, the ALJ must determine the onset date of the disability. *McLanahan v. Comm'r*, 474 F.3d 830 (6th Cir. 2011), citing, *Key*

*v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).  As noted in *McLanahan*, the

ruling states, in relevant part:

> Factors relevant to the determination of disability onset
> include the individual's allegation, the work history, and
> the medical evidence. These factors are often evaluated
> together to arrive at the onset date. However, the
> individual's allegation or the date of work stoppage is
> significant in determining onset only if it is consistent
> with the severity of the condition(s) shown by the
> medical evidence.

SSR 83-20, at 1.  Further, the ruling states that "the medical evidence serves as the

primary element in the onset determination."  *Id*. at 2.

As to the first issue presented by plaintiff, the undersigned concludes that the

ALJ's failure to specifically mention this ruling by itself is not error, as held by the

Sixth Circuit in *McLanahan*.  *See McLanahan*, 474 F.3d at 834 ("Because the ALJ

conducted the analysis required by the Ruling, his failure to mention it by name is

not fatal to the decision.").  In this case, a complete reading of the ALJ's decision

suggests an attempt to follow the ruling as to plaintiff's slow onset of cardiac

impairment.  The ALJ concluded as follows:

> As of June 11,2009, the claimant, in addition to the
> impairments discussed above, has had the severe
> impairments of residuals of an abdominal aortic
> aneurysm, peripheral vascular disease, and coronary
> artery disease (20 CFR 404.1520(c) and 416.920(c)).
> Since June 11,2009, there is medical evidence that the
> claimant has severe cardiovascular impairments. Dr.
> Gupta wrote on December 11,2009, that the claimant has

> an abdominal aortic aneurysm and peripheral vascular
> disease and that he has chest discomfort and dyspnea that
> was typical and was related to ischemic heart disease
> (Exhibit 19F).

(Dkt. 9-2, Pg ID 42).  The ALJ extensively discussed the medical evidence in

reaching the conclusion that plaintiff was not disabled before June 11, 2009 and

before this date, he could perform a wide range of unskilled sedentary work.  (Dkt.

9-2, Pg ID 44-47).  The ALJ found that while plaintiff had other severe

impairments, in June 2009, he developed severe cardiovascular impairments that

disabled him.  (Dkt. 9-2, Pg ID 47).  In selecting this date, the ALJ relied on the

following medical evidence:

> Since June 11,2009, the claimant developed severe and
> disabling cardiovascular impairments. N. Gupta, M.D., a
> cardiologist, wrote on December 11, 2009, that the
> claimant has a history significant for chest pain, which
> was "crushing, stabbing feeling with shortness of breath,
> especially with exertion, along with which he gets
> nausea, lightheaded, excessive swelling and blurred
> vision" (Exhibit 19F). *The doctor stated that the*
> *claimant had been seen in the Wyandotte Hospital*
> *emergency room, where he was found to have an*
> *aneurysm of the infrarenal aorta and that he also has*
> *peripheral vascular disease*. Dr. Gupta wrote on January
> 9, 2010, that the claimant had undergone a left heart
> catheterization on January 8, 2010, which showed 90%
> disease in his proximal and mid right coronary artery and
> 90% disease in his circumflex.  The doctor stated that the
> claimant was already taking Bystolic, Lisinopril and
> medication for glycemic control and was to start taking
> Plavix and Vytorin.

> Since June 11,2009, the claimant developed new and
> severe cardiovascular impairments, including abdominal
> aorta aneurysm, peripheral vascular disease, and coronary
> artery disease.  Treating physician and cardiologist, Dr.
> Gupta, wrote in his cardiac residual functional capacity
> questionnaire dated January 11, 2010, that because of his
> cardiovascular impairments, the claimant experiences the
> symptoms of chest pain, shortness of breath, fatigue,
> weakness, and palpitations (Exhibit 21F).  Since June 11,
> 2009, the claimant is restricted to an insignificant range
> of sedentary exertional work.

(Dkt. 9-2, Pg ID 47-48) (emphasis added).  The ALJ seems to have wholly adopted

the opinions of Dr. Gupta from December, 2009 and then somehow concluded that

plaintiff became disabled in June 2009.

Apparently, the ALJ was at least attempting to acknowledge that plaintiff's

conditions that the ALJ determined were disabling did not suddenly appear in

December 2009, presumably taking the holding of *Blankenship v. Bowen*, 874 F.2d

1116 (6th Cir. 1989) into account.  *Blankenship*, 874 F.2d at 1122 ("By choosing

this date [of an examination], the ALJ was, in effect, erroneously requiring the

impairments to reach Listing severity before finding appellant disabled, and

erroneously failing to draw any inferences from the medical and other evidence as

to whether appellant was able to engage in substantial gainful activity prior to the

expiration of his insured status.").  However, the basis for the selection of this date

is not entirely clear from the ALJ's decision, especially since Dr. Gupta relied, at

least in part, on the Wyandotte emergency room records to establish that plaintiff

had an abdominal aortic aneurysm, as noted by the ALJ above.  Neither the parties

nor the ALJ note that the Wyandotte emergency room records establishing the

existence of the aortic aneurysm are from *January 2009*.  (Dkt. 9-10, Pg ID 540).

Given that this condition, which was critical, although not exclusive, to the ALJ's

finding of disability, the undersigned is simply unable to discern a reasonable basis

for the ALJ's selection of June 11, 2009 as plaintiff's onset date.  Further, since

plaintiff suffered from an *abdominal* aortic aneurysm, the undersigned is not

entirely convinced that plaintiff's plethora of earlier "normal" cardiac findings as

recounted by the ALJ necessarily speak to this condition.  However, neither the

undersigned nor the ALJ are cardiologists and this seems to be the precise

circumstance where the ALJ might have benefitted from consulting a medical

expert regarding plaintiff's onset date.  *McClanahan*, 474 F.3d at 837 (6th Cir.

2006) (SSR 83-20 contemplates calling a medical expert when "there is no

development of the medical record on which the ALJ can rely to ascertain

onset.").[2]  Under the circumstances, the undersigned recommends remanding for

further inquiry in the basis of the ALJ's decision regarding plaintiff's onset date, as

---

[2]  The undersigned is not suggesting that the failure to use a medical expert
was, by itself, reversible error.  *Landsaw v. Sec'y of Health & Human Servs.*, 803
F.2d 211, 214 (6th Cir. 1986) (The decision to call a ME is generally within the
ALJ's discretion.); *Young v. Comm'r of Soc. Sec.*, 2011 WL 2923695, *6 (S.D.
Ohio 2011) (The court may overturn the ALJ's decision only if it appears that
using a medical expert was "necessary-rather than simply helpful-in order to allow
the ALJ to make a proper decision.") (citations omitted).

it relates to his cardiac impairments.

While the Commissioner presents some persuasive arguments that Dr. Dakroub's opinions are not supported by the medical evidence and that some of his opinions appear to be without any basis in fact, the undersigned is not persuaded that the complete omission by the ALJ of these opinions is "harmless error." The Sixth Circuit has not specifically adopted a harmless error standard as recently explained in *Monateri v. Comm'r of Soc. Sec.*, 436 Fed.Appx. 434, 444 (6th Cir. 2011):

> In this Court's decision in *Rogers*, we held that a failure to follow the procedural requirement of giving "good reasons" for discounting a treating physician's opinion constituted a lack of substantial evidence. *Rogers*, 486 F.3d at 242. We held that an ALJ's failure to set forth reasons for according weight to the medical opinion of a treating physician justified reversal and remand because it precluded meaningful appellate review of the determination. *See id.* at 242-43. Therefore, the complete omission of a treating physician's opinion in an ALJ's decision would generally constitute a lack of substantial evidence and compel remand. We have not yet held that such an error is subject to a harmless error exception and it is not necessary to do so today.

In *Monateri*, the Court held that the failure to mention the particular physician did not require reversal because his medical records and opinions "were explicitly incorporated in the medical opinion given [by another physician] and were considered by the ALJ." *Id.* There is no such similar circumstance in this case.

There is also no suggestion in the ALJ's decision that he actually considered Exhibits 10F or 12F, which contain Dr. Dakroub's opinions. *See Honeycutt-Jeffers v. Astrue*, 2012 WL 424986 (E.D. Tenn. 2012) (Citing *Monateri* and rejecting claim that ALJ erred by failing to identify a particular treating physician by name where it was clear from the decision that the records and opinions from that particular physician were considered.). Thus, the undersigned also recommends that this matter also be remanded for the consideration of Dr. Dakroub's opinions, such as they are.

Finally, while the undersigned agrees with the Commissioner that plaintiff failed to point to any evidence in the record to support additional limitations caused by his other severe impairments, Dr. Dakroub's opinions seem to touch on many of plaintiff's impairments. Thus, a determination of these issues is inextricably intertwined with the ALJ's consideration of Dr. Dakroub's opinions. Until the ALJ has had an opportunity to address the substance of Dr. Dakroub's opinions, the property of the ALJ's decisions on the remainder of plaintiff's impairments must wait.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, that the findings of the Commissioner

be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may

Report and Recommendation
Cross-Motions for Summary Judgment
*Scott v. Comm'r*; Case No. 11-11009

rule without awaiting the response.

Date: March 5, 2012                    s/Michael Hluchaniuk
                                       Michael Hluchaniuk
                                       United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 5, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Steven V. Harthorn, Lynn Marie Dodge, AUSA, and the Commissioner of Social Security.

                                       s/Darlene Chubb
                                       Judicial Assistant
                                       (810) 341-7850
                                       darlene_chubb@mied.uscourts.gov